ELIZABETH CARANI
*vs.*
CORNELIUS J. DANAHER, ADMR.

Superior Court          Hartford County          File No. 69595

MEMORANDUM FILED OCTOBER 18, 1943.

*F. A. Pallotti, Attorney General,* and *Harry Silverstone, Assistant Attorney General,* for the Defendant.

McEVOY, J. The appellant is a married woman, forty years of age, and the mother of seven children, ages nineteen, sixteen, fifteen, thirteen, eleven, eight and six years respectively. She was last employed by Hartford Machine Screw Company, 467 Capitol Ave., Hartford, Connecticut, from July, 1942, to March, 1943, on the 4:00 p. m. to 12:00 p. m. shift.

During the first months of that employment she was doing bench work but she was then transferred to machine operation, which work was too heavy for her as she was required to stand during most of the time of her employment. Consequently, when she was advised by her doctor to discontinue this work, she voluntarily separated from the employment.

On April 5, 1943, credited as of April 4, 1943, under regulations of the Administrator, she registered for work and applied for unemployment compensation benefits and, since that time, she has received five checks, each in the sum of $14.50 or a total of $72.50, leaving a durational balance of $67.50.

On May 28, 1943, she was notified by the Unemployment Compensation Department that all claims filed by her after May 18, 1943, were disallowed on the ground that she was unavailable for work because of domestic responsibilities.

On May 13, 1943, the appellant accepted referrals by the United States Employment Service to Hamilton Standard Propeller Division, United Aircraft Corporation, and was offer-

ed employment but declined the employment as the work required her to constantly stand. Appellant was not disqualified for benefits on the basis of this refusal to accept employment, since the examiner felt that such refusal was justified for health reasons, but she was held to be disqualified because routine examination revealed that she was unwilling to accept work on other than the second shift.

It is readily apparent that the appellant has restricted her availability for employment to the second shift, that is, to hours which would allow her to work from 3:00 p. m. or thereabouts until 12:00 p. m. She has so restricted her availability and declined to work on other shifts because of her desire to take care of her children, prepare their meals and otherwise care for them during the earlier hours of the day. On the other hand, she has made independent effort to obtain suitable employment on the desired shift in various factories in and about the city, being ultimately successful on June 4, 1943, in obtaining employment as an inspector at United Aircraft Corporation, on the shift desired by her, and she has since been so employed.

This brings up for consideration and determination the definition of the term "availability." The restriction which the appellant has imposed upon herself does not come under any of its accepted classifications.

Bouvier definies "available" as "capable of being used; valid or advantageous." (3rd Rev. [Rawle] 1914.) Webster's New International Dictionary (2d ed.) defines "available" as "capable of being used to accomplish a purpose; usable."

In any event, it will be observed that this appellant earned her wage credits on the second shift and that she is thus available for work in the same type of employment in which she earned her wage credits.

In th case of *Egan vs. Great Atlantic & Pacific Tea Co.,* (U. C. 504-A-38, Superior Court No. 59738), Hon. Edward J. Quinlan, presiding in the Superior Court, ruled that a student claimant, who had restricted his availability for employment to (1) part time only, and (2) as to the specific hours he would work, namely, after school from 3:00 p. m. to 6:00 p. m. and all day Saturday, was eligible for benefits since he was available for work in the same type of work in which he had earned his wage credits.

This likewise was the decision in the case of *Keller vs. Brown-Thomson, Inc.,* (U.C. 525-A-38, Superior Court No. 59737). For more recent discussions of this issue see U.C. 866-A-41 (*Barbara B. Folk vs. G. Fox & Co., Inc.*) and U.C. 50-A-43 (*Richard J. Curtin vs. Danaher, Administrator*).

British decisions are of the same tenor and they allow a claimant for benefits to select the hours of employment, or even part-time employment as long as there is a market for this sort of employment. (Unemployment Compensation Interpretations Service, General Supplement No. 1.)

"The British System of Social Insurance" by Percy Cohen (1932) states as follows (p. 166) : "A person is available for work when his personal conditions and circumstances leave him free to accept and undertake some form of work. Availability for part-time employment is sufficient to satisfy the condition if the claimant is eligible for work in an occupation where part-time employment prevails to an appreciable extent."

Hence the conclusion is reached that this appellant is ready, eager and anxious to accept employment; there is a market on the shift selected by her, and thus she is available for work in the same type of employment in which she earned her wage credits.

This appellant is ready, willing and able to accept suitable work. She is available for work; and, in consequence, she is entitled to unemployment compensation benefits. This claimant, ordinarily, would not be required to work. Realizing that she is required to try to earn money in order to support and take care of her family, she is endeavoring to do what she thinks is her duty to her family. She meets it in the way which is most consistent with her desire to earn her living and, at the same time, to comply with her duty as the mother of these children. In addition to this her occupation is such that it is of benefit to the war endeavor. Her difficulty arises out of her attempt to meet all of these obligations in a way consistent with normal effort. This seems to account for her desire to work on the particular shift on which she has elected to work. Such attitude ought to be encouraged. The record does not show that any inconvenience or harm comes to anyone by reason of her election. On the contrary it seems to indicate that she is attempting to meet her obligations with due regard for them.

The appeal is dismissed.